# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **HALLE WEHMEYER,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | |
| § | **CIVIL CASE NO. 1:23-CV-1328** |
| **ACTIVEPROSPECT INC.** § | |
| § | |
| **Defendant.** § | **JURY TRIAL DEMAND** |
| § | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Halle Wehmeyer ("Plaintiff" or "Ms. Wehmeyer") files this Complaint against Defendant ActiveProspect, Inc. ("Defendant" or "Active") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, arising from the unlawful discrimination and hostile work environment in her employment based on Ms. Wehmeyer's sex and retaliation following her complaints regarding said discrimination, including her unlawful discharge.

### I.   PARTIES

1. Plaintiff Wehmeyer is domiciled in the State of Texas and is a citizen of the State of Texas.

2. Defendant ActiveProspect is a Texas company with its principal place of business in Austin, Texas. ActiveProspect may be served by serving its registered agent Steven Rafferty, 3612 Bonnie Road, Austin, Texas 78703. Defendant has more than 100 employees and is engaged in interstate commerce, and thus is an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), as this matter contains a federal question.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a)(1) and (b)(2), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Texas.

## III. ALL ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

5. Wehmeyer filed a Charges of Discrimination, Numbers 460-2023-02886, and 451-2023-01811, against Defendant with the EEOC in February 7, 2023. She completed an amended charge with the EEOC on March 9, 2023.

6. On August 19, 2023, the EEOC issued Wehmeyer a Right to Sue letter for EEOC Charge Numbers 460-2023-02886, and 451-2023-01811 ("Right to Sue Letter").

7. Wehmeyer has filed this present civil action within 90 days of receiving her Right to Sue Letter.

8. Administrative prerequisites have been met prior to filing this civil action

## IV. FACTUAL BACKGROUND

9. In early 2021, our client started with the Company as a technical project manager, where she reported to Robby Anderson. In the middle of 2022, she transitioned to software engineer with a small raise. By any objective measure, she has performed remarkably well.

10. Unfortunately, since she transitioned to software engineer and started to report to Samuel Mullen, her time at ActiveProspect has been marred by sex discrimination, sexual harassment, and retaliation. This is not particularly surprising but is especially egregious

considering that Ms. Wehmeyer is the **only woman engineer** on the Lead Conduit team, and one of only two women engineers that Defendant employs in the whole United States.

11. Although Ms. Wehmeyer received rave reviews from Mr. Anderson, Mr. Mullen did not give her even the slightest opportunity to succeed, unlike his attitude towards the male engineers. Almost immediately, he singled out Ms. Wehmeyer as someone who, as he told her, did not have the "aptitude to program" and "had no ability." Then, instead of assigning her meaningful projects as he did to the other male engineers, he oddly assigned her an **interview question** and told her to take two weeks to solve it. Despite feeling humiliated, she worked hard and answered the interview question correctly. But instead of complimenting her, Mr. Mullen, possibly not believing that a woman would solve the problem, became enraged, concluded that she must have "cheated," and then issued her a "warning."

12. In other ways, Mr. Mullen singled out the only woman engineer on her team in a way that he never did with male engineers. Indeed, it appears that Mr. Mullen was intentionally trying to get our client to fail. For example, when he assigned her stories, he specifically said that she could not seek assistance, or collaborate, with anyone else on her projects. He even asked several of our client's co-workers to let him know if she even asked a question about one of her projects. Further, he would specifically assign her projects that involved backend programming knowing full well that front-end programming projects were more suited to her skill set. And when Ms. Wehmeyer said that a problem with a Date of Birth database that prevented her from completing one of her assignments, Mr. Mullen consistently told her she was wrong until other male engineers supported her position. Only then, after several weeks of wasted time and effort, did Mr. Mullen concede that he was wrong.

13. In addition, Ms. Wehmeyer had to endure sexist and inappropriate comments throughout her time at ActiveProspect. She was also told that colleagues were making sexually suggestive comments about her.

14. Due to this sexism, our client became frustrated, confused, and scared. Although she wanted to tell Human Resources about her treatment, she did not want to suffer any retaliation from Mr. Mullen or anyone else at the Company. Despite her fears, on October 20, 2022, she found the courage to write Rebecca Heath, Senior Manager, Global People and Culture, to "schedule some time to chat," as our client was "confused" and wanted to "discuss" some "dynamics on the team." Unfortunately, Ms. Heath was, as she told our client later, was "too busy" to even respond to Ms. Wehmeyer's email and her request for a meeting to discuss the sexual harassment and sexist conduct.

15. After ignoring our client's attempts to address the sexism and harassment, the Company then flat-out approved it. On January 12, 2023, our client sent **yet another** desperate email to Ms. Heath, where she specifically referenced the sexist comments, the fact that her male colleagues were making sexually inappropriate comments about her, and her feeling that she was being treated differently because "she was a woman." In her email, our client also mentioned how, as a "young woman" among all male colleagues, she felt "alone" and "isolated."

16. Within just a few days, the Company somehow concluded that our client's complaints were completely unfounded. Ms. Heath specifically told Ms. Wehmeyer that nobody did anything wrong, that none of our client's issues had any merit, and that nothing (including the fact that Ms. Wehmeyer would report to Mr. Mullen) would change. Rest assured, the first thing that we will do in discovery is obtain information to understand the Company's "investigation" (e.g., all notes, whom the Company interviewed), and how it possibly concluded in such a short

time that nobody made sexist comments, that no male colleagues talked about our client in a sexually inappropriate way, and that no woman could ever feel alone or isolated at ActiveProspect.

17. To make matters worse, not only did the Company completely dismissed our client's reports of harassment, but the Company then retaliated against her. Just a few days after her second email to Ms. Heath, our client received another, more formal "warning" about her performance even though the evidence will show that she was performing as well as or even better than many of her front-end software engineering colleagues. Then she was required to report directly to her harasser and then fired as a result of her complaints of discrimination and harassment.

18. Under both federal and Texas laws, ActiveProspect is now liable for sex discrimination, sexual harassment, and retaliation. Under the new Texas state law, Mr. Mullen is also personally liable for sexual harassment. Texas Labor Code § 21.141(1)(B) (amending definition of "Employer" to include a person that "acts directly in the interests of an employer in relation to an employee").

## V. CAUSES OF ACTION

### COUNT ONE: HARASSMENT ON THE BASIS OF SEX IN VIOLATION OF TITLE VII

19. Plaintiff incorporates every allegation set forth above.

20. Title VII prohibits discrimination based on sex with respect to an employee's compensation, terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2(a). This includes sexual harassment through the creation of a hostile work environment.

21. Defendant created and maintained a sexually hostile work environment by subjecting Ms. Wehmeyer to discriminatory intimidation, humiliation, and hostility so severe and pervasive that it affected the conditions of her employment.

22. Defendant's actions directly and proximately caused Ms. Wehmeyer to suffer economic loss, including but not limited to salary and employee benefits, a loss of future professional opportunities and future income, and have caused humiliation, indignity, personal embarrassment, and pain and suffering.

23. Defendant's actions were taken with actual intent to cause injury to Ms. Wehmeyer and these actions were done willfully and maliciously, or with reckless indifference to Ms. Wehmeyer's legal rights.

## COUNT THREE: RETALIATION IN VIOLATION OF TITLE VII

24. Plaintiff incorporates each allegation set forth above.

25. Title VII makes it unlawful for an employer to discriminate against any of its employees because an employee has opposed any practice made unlawful by Title VII.

26. Ms. Wehmeyer engaged in protected activity under Title VII by opposing treatment that constituted unlawful harassment, including objecting to the sex-based discrimination she subjected to by Mr. Mullins.  Ms. Wehmeyer's protected activity includes, but is not limited to, her requests for help when Mr. Mullins harassed.

27. Defendant took adverse actions against Ms. Wehmeyer that were causally connected to her protected activity.  Defendant began efforts to transfer Ms. Wehmeyer to another location and then terminated her employment in direct response to her objection to Mr. Mullins discriminatory behavior towards her.

28. Defendant's actions directly and proximately caused Ms. Wehmeyer to suffer economic loss, including but not limited to salary and employee benefits, a loss of future professional opportunities and future income, in addition to humiliation, indignity, personal embarrassment, and pain and suffering.

29.  Defendant took the actions complained of herein with actual intent to cause injury to Ms. Wehmeyer and these actions were done willfully and maliciously, or with reckless indifference to her legal rights.

## VI.  JURY DEMAND

30.  Plaintiff demands a trial by jury.

## VII.  PRAYER

31.  Plaintiff respectfully requests the following relief:

   a.  damages for back pay, front pay, lost benefits, and medical expenses in an amount to be proved at trial;

   b.  damages for loss of enjoyment of life, pain and suffering, mental anguish, emotional distress, and humiliation;

   c.  prejudgment interest in an amount to be proved at trial;

   d.  compensation for any tax penalty associated with a recovery;

   e.  reasonable attorney's fees and costs; and

   e.  whatever further and additional relief the court shall deem just and equitable.

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS LLP**

By:  *s/ Alvin Adjei*
Alvin Adjei
Federal Bar No.
609 Main St. Suite 2500
Houston Texas 77002
Phone: (832) 356-2684
Fax: (832) 356-2684
E-mail: aadjei@hkm.com

*Counsel for Plaintiff*

7

CIVIL CASE NO. 1:23-CV-1328